Nicholas G. DOZORYST II, Appellant,

v.

**FIRST FINANCIAL SAVINGS AND LOAN ASSOCIATION OF DOWNERS GROVE and Percy Davis, Appellees.**

**No. 81 C 6397 (Bankruptcy Appeal).**

United States District Court,
N. D. Illinois, E. D.

May 28, 1982.

John H. Redfield, Dozoryst, Redfield & Brustein, Chicago, Ill., for appellant Dozoryst.

Leonard Ganiel, Law Offices of Leonard Ganiel, Ltd., Chicago, Ill., for appellees First Financial and Davis.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nicholas G. Dozoryst II ("Dozoryst"), trustee of the estate of debtor Emilda Davis ("Emilda"), appeals a September 24, 1981 Bankruptcy Court order denying Dozoryst fees and costs incident to his sale of property for the benefit of the estate's sole secured creditor, First Financial Savings and Loan Association of Downers Grove ("First Financial"). For the reasons contained in this memorandum opinion and order, the order appealed from is affirmed.

*Facts*[1]

On October 1, 1980 Emilda initiated Chapter 7 proceedings in the Bankruptcy Court. On October 9 that Court appointed Dozoryst trustee.

Only one of Emilda's assets had substantial value: her one-half interest as joint tenant in a two-flat apartment building in Waukegan, Illinois. Emilda's husband Percy ("Percy"), from whom she had been separated for some time, was the other joint tenant. Emilda had not lived in the building for nearly two years. Percy lived in one apartment and had made mortgage payments on the building to First Financial as mortgagee through October 1980.

In February 1981 a real estate broker with whom Percy had signed a listing agreement produced prospective buyers ("Galloways") willing to pay $66,000 for the property. When they learned of the pending bankruptcy Galloways withdrew their offer.[2] Later Dozoryst went back to Galloways and entered into a sale contract (but with no brokerage commission) for $62,000. Dozoryst sought and obtained Bankruptcy Court approval (with no objection by First Financial) of that sale.

Percy's failure to vacate the premises caused delay in the originally scheduled July 20, 1981 closing date. In any case the net cash proceeds of sale came only to $57,610.08. After the hearing in the adversary proceeding developed the background facts and the fact that First Financial's mortgage terms entitled it to $59,926.60 (leaving no equity in the bankrupt's estate), Bankruptcy Judge Lawrence Fisher stated that:

(1) Dozoryst's expressed belief (that he had thought the mortgage balance was such as to leave an equity of some $3,000) was a mistake in fact and "we are to realize money for the estate, not for the Trustee from such a sale."

(2) First Federal had the first interest in the proceeds and should be paid to the

1. Although the Bankruptcy Court did not enter specific findings as part of its order, the facts emerging from the record are really undisputed. Some detail is needed to understand the proper application of the relevant rules of law.

2. It is unnecessary for purposes of this opinion to determine whether Dozoryst bears any responsibility for the loss of that more favorable deal.

exclusion of any funds going to the estate or to Dozoryst.

(3) Percy was nonetheless entitled to relief under all the circumstances.

At the end of the hearing Judge Fisher awarded $57,000 to First Financial (which agreed to accept that lesser sum) and $588 to Percy, denying any fees or expenses to Dozoryst. This appeal followed:

### Priorities as Between First Federal and Dozoryst

Bankruptcy Code § 506 defines the applicable priorities whenever the bankrupt's property subject to a secured claim is sold. It contains a contingent provision for amounts recoverable by the trustee:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Without question all the amounts claimed by First Federal (aggregating $59,926.60, more than the sale proceeds) are either part of the "allowed secured claim" or "reasonable fees, costs, or charges provided under the" mortgage. That being so, Dozoryst can recover only "to the extent of any benefit to" First Federal from his incurring "reasonable, necessary costs and expenses."

 Any fair reading of Section 506(c), the source of Dozoryst's potential recovery, produces two conclusions:

(1) "Benefit" to the secured creditor must be shown in the quantitative, not any qualitative or generalized, sense. That is the plain thrust of granting recovery only "to the extent of any benefit." [3]

(2) It must be the trustee's burden as claimant to prove such benefit, not that of the secured creditor to disprove it. Again that is the normal construction of a statutory provision that gives relief to the trustee solely on the satisfaction of specified conditions.

Dozoryst has manifestly failed to meet his burden as so defined.

 Nothing in the record demonstrates "benefit" to First Financial in the quantifiable sense. Dozoryst has produced no proof that his efforts to sell, and ultimate sale of, the Davises' property generated such benefit. Indeed, during the time Dozoryst was involved in "disposing of" the property, Galloways' offering price decreased from $66,000 to $62,000. Dozoryst need not be shown to have been at fault in that respect. What controls is that Dozoryst has failed to prove that but for his efforts the sum realizable from the property would have been less than $57,610.08. Dozoryst correctly asserts that First Financial's mere ability to pursue a state foreclosure remedy does not necessarily mean Dozoryst's actions conferred no benefit on First Financial. *See In re Truitt,* 15 B.R. 169, 5 C.B.C.2d 532, 533 (Bkrtcy.N.D.Ga.1981). But it involves a total *non sequitur* to leap from that proposition to the conclusion that First Financial was in fact benefitted where such state proceedings were avoided. No detailed discussion of Dozoryst's arguments is required, for his failure of quantitative proof is patent and cannot be cured by theoretical statements of *possible* "benefit."

Nor may it be argued that First Financial somehow waived its right to insist on Dozo-

---

**3.** This view of the statute is called for not only by its clear language but by the special position of the secured creditor under the Bankruptcy Code. Because there can properly be no impairment of the security, added dollar value must be injected by the trustee's actions before any like amount may be charged against the fund. Were that not the case, the value of the secured creditor's position could be impermissibly diminished by the trustee's exercise of dominion over the collateral.

ryst's satisfying Section 506(c). *See, In re Robertson*, 14 B.R. 706, 708–09 (Bkrtcy.N.D. Ga.1981). This is not a case like *In re Hotel Associates, Inc.*, 6 B.R. 108, 2 C.B.C.2d 1162 (Bkrtcy.E.D.Pa.1980), where the secured creditor specifically instigated the appointment of a trustee for Chapter 11 corporate reorganization purposes.

*Conclusion*

Because Dozoryst has failed to prove that his activities conferred any quantifiable benefit on First Financial as mortgagee, Dozoryst has not shown himself entitled to recovery under Section 506(c).[4]

Accordingly the Bankruptcy Court order denying Dozoryst's claimed "fees and expenses" was proper and is affirmed.

---

**4.** It thus becomes unnecessary to consider whether the items claimed by Dozoryst would be within the "reasonable, necessary costs and expenses" allowable under Section 506(c). Dozoryst's main claim is for $3,791.25 in *fees* rather than out-of-pocket expenses—a troublesome item in any event under facts like those presented here.