In re RAWSON FOOD SERVICES,
INC., Appellant,

v.

CREDITORS' COMMITTEE, Appellee.

Nos. 86–814–Civ–J–14, 86–174–BK–J–GP.

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 20, 1986.

Harvey Granger, IV, Stephen D. Busey, and Smith & Hulsey, Jacksonville, Fla., for appellant.

Ronald Bergwerk, Jacksonville, Fla., for appellee.

## OPINION

SUSAN H. BLACK, District Judge.

This case is before the Court on appeal from a Memorandum Order of the United States Bankruptcy Court for the Middle District of Florida, entered on May 23, 1986. The appellant, Rawson Food Services, Inc., filed its brief on August 25, 1986. On October 22, 1986, the appellee Creditors' Committee filed its response to this Court's Order to Show Cause, filed herein on October 17, 1986, and on that same date filed its brief. On November 3, 1986, the appellant filed its Reply Brief.

The appellant presents three issues for review by this Court: (1) whether employees' claims for severance pay that arise during a Chapter XI proceeding and are computed based upon the employees' years of service with the debtor constitute "administrative expenses" entitled to priority under the Bankruptcy Code; (2) whether the Bankruptcy Court erred in finding that the debtor's post-petition "reaffirmation" of its severance program did not induce its employees to remain on the job; (3) whether the Bankruptcy Court erred in finding that the employees' performance of services after such "reaffirmation" did not con-

stitute adequate consideration to support their claims for severance pay.

The facts of this case are as follows. The appellant, Rawson Food Services, Inc. [hereinafter "Rawson"], formerly operated a chain of retail grocery stores located throughout northeast Florida and southeast Georgia. On February 19, 1986, Rawson filed a petition for reorganization under Chapter XI of the Bankruptcy Code in the United States Bankruptcy Court in Jacksonville. Shortly thereafter, Rawson, acting as debtor-in-possession pursuant to Sections 1107 and 1108 of the Code, requested and received authority from the Bankruptcy Court to sell all of its remaining operating stores to Super Valu Stores, Inc. [hereinafter "Super Valu"]. In order to maximize the inventory which it intended to sell to Super Valu, Rawson retained certain key employees to conduct liquidation sales and to wind up its operation in an orderly and expeditious fashion.

On March 14, 1986, in an effort to insure that the key employees would remain with Rawson until the consummation of the sale to Super Valu, Rawson reaffirmed its obligations under a severance program which it had established in September, 1985. Under this severance program, each employee upon termination would receive benefits based upon the length of his or her continuous employment with Rawson and its predecessor corporation, Pantry Pride Enterprises, Inc. Approximately seven to ten days after the "reaffirmation," the key employees were terminated.

On April 11, 1986, after learning that Rawson intended to distribute approximately $300,000 in severance pay to its key employees, the Creditors' Committee moved for an order prohibiting the distribution. Rawson in turn filed a motion for authorization to make the payments on May 2, 1986. On May 23, 1986, after having conducted an evidentiary hearing and having received memoranda of law supporting both parties' positions, the Bankruptcy Court entered its Memorandum Order Prohibiting Payment of Severance Benefits and Medical Insurance Premiums as an Administrative Expense. Rawson timely filed a Notice of Appeal from this order.

The first question presented by this appeal is whether claims for severance pay that arise during a Chapter XI proceeding and are computed based on the claimants' length of employment constitute administrative expenses entitled to priority under the Bankruptcy Code. The court below's conclusion of law that such claims are not entitled to priority is subject to this Court's *de novo* review. *In re Mellor*, 734 F.2d 1396 (9th Cir.1984).

Section 507 of the Bankruptcy Code (11 U.S.C. § 507) gives first priority to "administrative expenses allowed under section 503(b)." Section 503(b)(1)(A) defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case." Although there are no Eleventh or Fifth Circuit decisions addressing whether the severance pay claims before the Court fall within this statutory definition, four other circuits have provided helpful guidance. Those courts agree that a severance pay claim can be treated as an administrative expense only if it arises out of a transaction between the creditor and the trustee (or debtor-in-possession). However, the circuits disagree on the issue of whether a claim for severance pay based on length of employment arises out of such a transaction. A majority of the circuits hold that severance pay based on the length of employment accrues over the entire period of employment and thus is not entitled to priority as a cost of administration. *Matter of Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976); *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947). One circuit holds that the right to severance pay arises on the date of discharge, and, therefore, a claimant who was discharged during the period of administration of the bankruptcy estate is entitled to first priority. *Trustees of the Amalgamated Insurance Co. v. McFarlin's, Inc.*, 789

F.2d 98 (2d Cir.1986); *In re W.T. Grant Company*, 620 F.2d 319 (2d Cir.1980), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980).

The Second Circuit adopted its minority rule in *Straus-Duparquet, Inc. v. Local No. 3 Int. Bro. of Elec. Wkrs.*, 386 F.2d 649 (2d Cir.1967). In deciding to award priority to claimants for severance pay, the court in *Straus-Duparquet* reasoned that because severance pay is compensation for termination of employment and because the employment is terminated by the trustee in administering the bankrupt's estate, severance pay must be seen as a cost of administration. 386 F.2d at 651. Although on its surface the logic of this decision appears to be sound, upon closer examination the Court finds that it fails to account for the potential variations in the cost of terminating individual employees. For example, in the present case, Rawson proposed to disburse to each employee severance benefits ranging from approximately $400 to $16,000, according to the length of service of the employee. If, as the Second Circuit suggests, severance pay based on length of service is merely intended to compensate employees for the hardships attributable to dismissal, then the variations in severance pay in the present case would be based on the questionable premise that the most senior employee suffered hardships forty times greater than those suffered by the most junior employee.

The majority rule regarding severance pay claims is the better-reasoned approach and is more consistent with the purposes of the Bankruptcy Code itself. The basic purpose of Chapter XI reorganization is rehabilitation of the debtor's business. *Health Maintenance Foundation* at 621. The statutory provisions that guarantee priority payment to creditors of the debtor-in-possession serve this basic purpose by encouraging creditors to do business with a company undergoing Chapter XI reorganization. *Id.* Thus a creditor's right to payment is afforded first priority only when the consideration supporting its right to payment was both supplied to and beneficial to the debtor-in-possession. *Mammoth Mart* at 954.

In light of these principles, the majority of circuits have determined that severance pay claims that arise during Chapter XI proceedings and are computed based upon the length of the claimant's employment shall not be awarded first priority. Under a severance pay program which recognizes employees for their years of service with the debtor, all of the consideration necessary for their severance pay claim accrues *before* bankruptcy occurs. *See Health Maintenance Foundation* at 622. Because the consideration supporting the employees' right to severance pay is supplied to the debtor rather than the debtor-in-possession, the severance pay claims cannot be considered to be "actual, necessary costs and expenses of preserving the estate" within the meaning of Section 503(b)(1)(A).

In the present case, the Court finds that Rawson failed to show that the consideration supporting the employees' right to severance pay was supplied to the debtor-in-possession. Instead, the record clearly indicates that the employees' years of service with the debtor constituted the consideration supporting the severance pay claims. The Court will, therefore, follow the reasoning of the First, Third and Ninth Circuits and uphold the Bankruptcy Court's denial of first priority status to the severance pay claims.

The remaining two questions presented by this appeal challenge certain findings of fact made by the court below. Rawson first challenges the Bankruptcy Court's finding that the debtor's post-petition "reaffirmation" of its severance program did not induce its employees to remain on the job for the final week before the liquidation sale. Next, it challenges the alternative finding that the employees' performance of services after such "reaffirmation" did not constitute adequate consideration to support their claims for severance pay.

This Court must accept the findings of the Bankruptcy Court unless they are

clearly erroneous. Bankruptcy Rule 8013;[1] *In re Greenbrook Carpet Co. v. National City Bank of Rome,* 722 F.2d 659, 660 (11th Cir.1984). In *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), the Supreme Court defined the "clearly erroneous" standard:

> A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Id.* at 395, 68 S.Ct. at 542. The former Fifth Circuit has held this definition to be applicable in bankruptcy cases. *Matter of Perimeter Park Inv. Assoc.,* 616 F.2d 150, 151 (5th Cir.1980).

As grounds for the challenged findings, the Bankruptcy Court explained that the key employees were loyal to Rawson and intended from the outset to remain working with Rawson throughout the Chapter XI proceedings. The Court further noted that the "reaffirmation" was made at a time when only one week of work remained to be performed. After careful examination of the entire record, the Court does not find any of the Bankruptcy Court's factual findings to be clearly erroneous.

In accordance with the foregoing, the decision of the Bankruptcy Court is affirmed.

---

**1.** This rule accords the bankruptcy judge's findings the same weight which is given to the district judge's findings under Fed.R.Civ.P. 52.