**In re CHICAGO LUTHERAN HOSPI-
TAL ASSOCIATION d/b/a Walther
Memorial Hospital, Debtor.**

**Bankruptcy No. 87 B 970.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 8, 1987.

Mark S. Lieberman, Karen Jackson, Rosenthal & Schanfield, Chicago, Ill., for Rhode Island Hosp. Trust.

John H. Mahoney, John A. Jensen, Chicago, Ill., for the U.S.A., on behalf of the Secretary of Housing and Urban Development.

Lee M. Burkey Jr., Asher, Pavalon, Gittler and Greenfield, Ltd., Chicago, Ill., for Warehouse, Mail Order, Office Technical and Professional Employees Union Local No. 743.

Brenda Porter Helms, Thomas E. Raleigh and Associates, Chicago, Ill., for Thomas E. Raleigh, trustee.

Norman P. Jeddeloh, Slegan, Barbakoff, Gomberg and Gordon, Chicago, Ill., for Chicago Health Resources Corp.

John T. Lortie, Chicago, Ill., for the U.S.A., I.R.S.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on the Trustee's Motion to Clarify this Court's Order of March 20, 1987. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), since it involves matters concerning the administration of the estate and 28 U.S.C. § 157(b)(2)(B), concerning the allowance or disallowance of claims against the estate.

The facts in this case are relatively simple. Chicago Lutheran Hospital, d/b/a Walther Memorial Hospital ("the Hospital") filed a Chapter 11 petition on January 22, 1987. On March 20, 1987, Thomas E. Raleigh was appointed Trustee. The Trustee was charged by the Court with overseeing the orderly shut-down of the Hospital. The Court also ordered that employees should be paid their "wages and benefits" for services performed for the Trustee. On March 24, 1987 the Trustee sought clarification of the Court's March 20, 1987 Order. The Hospital was closed and a substantial number of employees were discharged on March 27, 1987. The dispute focuses on what severance pay and/or vacation pay, if any, the employees are entitled to as a result this Court's March 24th Order, and what the priority of such claim or claims might be. The real question is whether all or any part of an employees' right to accrued vacation and severance pay became an expense of administration because of the Trustee's post-petition termination of the employees' services.[1]

The first issue the Court must determine is when the employees' benefit

---

1. Because the Trustee was appointed at the request of the creditor secured by virtually all of the assets of the Hospital, the U.S. Department of Housing and Urban Development ("HUD"), in order to provide for a shutdown which would minimize inconvenience and danger to the patients and at the same time preserve the integrity and maintenance of the Hospital—i.e. HUD's collateral. Accordingly, this Court ordered, without objection from HUD, that all expenses incurred by Trustee in administering and liquidating the assets of this estate would be reimburseable out of HUD's collateral under 11 U.S.C. § 506(c). *In re Hotel Associates, Inc.,* 6 B.R. 108 (Bankr.E.D.Penn.1980); *see Matter of Trim-X, Inc.,* 695 F.2d 296 (7th Cir.1982). The employees, if they can succeed in having their claims for vacation pay and severance pay deemed to be administrative claims, would then like to have those expenses deemed to have been incurred by the Trustee in order to be entitled to § 506(c) priority. In this unhappy case, where debtor in possession claims are unlikely to be paid in full, such a scenario the employees best hope for realizing on their claims.

As previously noted, HUD has a first lien on virtually all of the debtor's assets. HUD appears to be greatly undersecured. Therefore, the junior lien of the IRS in the debtor's principal assets is irrelevant in this dispute. The IRS does have a lien on some relatively small amount of nonoperating assets of the Hospital, which assets were not affected at all by the employee's services. The focal point of this dispute is on the assets subject to the mortgage assigned to HUD by Rhode Island Hospital Trust ("RIHT") during the course of this case.

claims accrued. When these benefits accrued will dictate what priority should be assigned to them. Logic compels the conclusion the employees' claims to vacation pay and other benefits which had accrued at the time of the filing of the bankruptcy petition are prepetition claims. Such claims are not transformed into a postpetition administration claims by virtue of the employees' postpetition termination. *See Matter of Jartran*, 732 F.2d 584 (7th Cir. 1984). *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir.1976). In effect, this result is mandated by the specific language of 11 U.S.C. § 507(a)(3). The focal point of the provisions is not the time the right to severance pay and vacation pay matured, but when it was "earned." An employee earns the right to severance pay and vacation pay as the employment relationship progresses. Such rights are not "earned" on the day the employee is terminated or at the time the employee takes a vacation. At those times, the previously "earned" benefits are paid out.[2]

The second question the Court must answer is what priority the employees' benefits claims are entitled under 11 U.S.C. § 507. The resolution of this issue is controlled by whether the claims are prepetition or postpetition benefit claims. Prepetition claims for wages, salaries, vacation and severance pay are governed by 11 U.S.C. § 507(a)(3) which provides:

(a) The following expenses and claims have priority in the following order: ... (3) Third, allowed unsecured claims for wages, salaries or commissions, including vacation, severance, and sick leave pay—
(A) earned by an individual within 90 days before the date of the petition or the date of the cessation of the debtor's business which ever occurs first: but only
(B) to the extent of $2,000 for each such individual.

Therefore, all claims for wages, vacation pay and severance benefits earned within 90 days of January 22, 1987, the date of filing of the petition, up to a maximum $2,000 per employee, are third priority unsecured claims. The balance of any employee's claim for wages and benefits in excess of $2,000 within the 90 days prepetition and all wage claims, vacation pay and severance benefits earned more than 90 days before the date of filing of the petition are nothing more than general unsecured claims, entitled to no priority whatsoever.

On the other hand, claims for wages, vacation pay and severance benefits earned postpetition may be given a first priority under 11 U.S.C. § 507(a)(1), if the claim "[a]rise[s] from a transaction with the debtor-in-possession" and was "[b]eneficial to the debtor-in-possession in the operation of the business." *Matter of Jartran*, 732 F.2d at 587 (citing *In re Mammoth Mart*, 536 F.2d at 950). A first priority among unsecured claims is, of course, for expenses of administration. Allowable expenses of administration include, "the actual, necessary cost and expenses of preserving the estate, including wages, salaries or commission *rendered after the commencement of the case.*" 11 U.S.C. § 503(b)(1)(A) (emphasis added). First priority administration claims also include virtually all other claims that arise against the estate while it is being administered by a trustee or debtor-in-possession so long as such claims are beneficial or necessary to the administration of the estate. *Matter of Jartran*, 732 F.2d 584 (7th Cir.1984). *Compare Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

This Court has no difficulty in determining that all postpetition benefits accrued by the employees were actual and necessary expenses of preserving the estate. The vacation benefits were part of

---

**2.** Compare 11 U.S.C. § 503(b)(1)(A) giving administration priority to claims for "wages, salaries or commissions for services rendered after the commencement of the case." Because of the use of the word "including" in § 503(b)(1)(A), the failure to refer to vacation pay or severance benefits in that provision is of no significance. *See* 11 U.S.C. § 102(3); *see also* 11 U.S.C. § 102(5).

the employment contract between the Hospital and the employees. Neither the Hospital, as debtor-in-possession, nor the Trustee rejected or attempted to reject the collective bargaining agreement under 11 U.S.C. § 1113. When the debtor-in-possession operated the Hospital it did so with the intention of successfully reorganizing the Hospital. Permitting the employees to continue to accrue benefits was necessary to the debtor-in-possession's reorganization attempt and was required by the terms of the collective bargaining agreement. The fact that the reorganization attempted failed does not affect the employees' administration claim. *Cf.* 11 U.S.C. § 726(b). Accordingly, all postpetition wage and wage related claims are entitled to be treated as first priority administration claims under 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1).

■ The third issue to be resolved by the Court is to what extent, the wage and benefit claims may be payable from the secured creditor's collateral. Generally, administration expenses are not chargeable against a secured creditor's collateral. However, the Bankruptcy Code does permit such expenses incurred primarily for the benefit of the secured creditor's collateral to be reimbursed from the secured creditor's collateral, to the extent such expenses benefited the secured creditor. 11 U.S.C. § 506(c). In effect, this provision gives certain expenses priority over the secured claim. It is only those expenses which were necessary, benefited the secured creditor, and were incurred postpetition which are reimbursable under 11 U.S.C. § 506(c).[3]

■ On this record, there is no evidence that the secured creditor received any direct benefits from the postpetition rendition of services by the employees of Hospital, at least until such time as the Trustee took over the operation of the Hospital. *Supra,* p. 2 n. 1. Without the identification of a direct and quantifiable benefit that their services gave the secured creditor, vacation pay and severance pay earned during the period from the petition to the appointment of the Trustee cannot be given a § 506(c) priority, and the Court's Order of March 20, 1987, could not have so provided without appropriate pleadings and hearing. *See Dozoryst v. First Financial Savings and Loan Ass'n of Downers Grove,* 21 B.R. 392 (N.D.Ill.1982).[4]

As previously noted, the Court's Order of March 20, 1987, did provide that expenses incurred by the Trustee in shutting down the Hospital and liquidating the estate would be deemed expenses compensable under 11 U.S.C. § 506(c) because such a shutdown would inure only to HUD's benefit. Furthermore, HUD expressly consented to the entry of that order. This consent is limited, however, solely to expenses incurred after the entry of the order. Therefore, only the vacation and benefits pay which were earned from March 20, 1987 to the date of the employees' discharge are compensable under 11 U.S.C. § 506(c) under that order and only those amounts are to be paid forthwith by the Trustee. The question of the compensability under § 506(c) of other postpetition services rendered by the employees is not resolved by the March 20, 1987 Order and may be determined in the future on proper request and hearing.

3. Expenses may also be recovered against a secured party's collateral when the creditor caused or consented to such expenses. *See Matter of Trim-X,* 695 F.2d 296 (7th Cir.1982).

4. This conclusion is without prejudice to the rights of the employees to assert 11 U.S.C. § 506(c) claims for that period of time under the procedure which the Trustee intends to ask the Court to implement for the assertion of § 506(c) claims. At that time, it will be up to the employees to show their services for this time fit within the *Trim-X* and *Dozoryst* standards. The only thing the Court is holding at this time is that nothing in the Court's Order of March 20, 1987 gave the employees a 506(c) claim for benefits earned after the petition until March 20th.