In re ULY–PAK, INC., Debtor.

Bankruptcy No. 89–40188.

United States Bankruptcy Court, S.D. Illinois.

July 10, 1991.

Terry Sharp, Mt. Vernon, Ill., for debtor.

Darrell Dunham, Carbondale, Ill., for Estate of H. Keith and Retha Howard.

Donald M. Samson, Belleville, Ill., trustee.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

H. Keith Howard, the former president and chief executive officer of Uly–Pak, Inc., seeks payment of his claim for severance pay as an administrative expense entitled to priority. The trustee in Uly–Pak's bankruptcy case objects to Howard's claim.

On February 24, 1989, Uly–Pak filed a Chapter 11 bankruptcy petition. In November 1989, after it became apparent that reorganization was not feasible, a trustee was appointed and the assets of the debtor were sold to Com–Pac International, Inc. The case was later converted to Chapter 7.

H. Keith Howard filed a claim against the bankruptcy estate for severance pay under the terms of his written employment contract with the debtor. The employment contract was to run from October 1, 1987, through September 30, 1995. Howard was to receive as salary a minimum of $60,000 per year plus bonuses based on the profits of the corporation. If terminated for any reason other than willful misconduct, Howard was to receive as severance pay his salary for the remaining term of the contract or, at the option of the debtor, a lump sum equal to 300% of his annual salary, to be paid within 10 days of severance.

Although the trustee never formally assumed his employment contract, Howard continued his employment with Uly–Pak postpetition. After the assets were sold to Com–Pac on November 21, 1989, Howard continued working for the buyer until he was terminated on December 8, 1989. Com–Pac expressly declined to assume Howard's employment contract in its bid to purchase the assets.

Howard died on September 11, 1990, and his estate now seeks a lump sum payment of $180,000 as severance pay under the provisions of the employment contract.[1] Howard's estate contends that the severance pay constitutes an administrative expense under 11 U.S.C. § 503(b)[2] entitled to priority pursuant to §§ 507(a)(1) and 726(a)(1).

---

1. Howard's estate has assumed his claim against Uly–Pak's bankruptcy estate. For convenience, the estate's claim will be referred to as "Howard's claim."

2. Section 503(b) provides in pertinent part:
    (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
    (1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

## ASSUMPTION/REJECTION OF HOWARD'S CONTRACT

Before considering whether Howard's claim for severance pay constitutes an administrative expense by its terms, the Court must analyze Howard's employment contract under the executory contract provisions of 11 U.S.C. § 365.[3] The parties agree that Howard's contract was never formally assumed or rejected. However, Howard's estate argues that the Court may order the contract assumed *nunc pro tunc*. Conversely, the trustee argues that the contract is automatically deemed to be rejected because it was never assumed. Because the status of Howard's claim as an administrative expense would be affected by the success of either of these arguments, it is necessary to discuss their merits.

■ When a trustee or debtor in possession assumes an executory contract with court approval pursuant to § 365(a),[4] all expenses and costs incurred in performing the contract are administrative expenses. *In re Coast Trading Co.*, 744 F.2d 686, 692 (9th Cir.1984). The rationale for this rule is that if a contract is assumed, its costs are considered necessary for the preservation of the estate as required by § 503(b).

Relying on *In re Miami General Hospital, Inc.*, 89 B.R. 980, (Bankr.S.D.Fla.1988), Howard's estate asks the Court to order Howard's employment contract assumed *nunc pro tunc*. Faced with facts materially identical to the instant case, the *Miami Hospital* court held that the debtor assumed an employment contract by accepting its benefits. That court then approved the assumption *nunc pro tunc*, presumably based on equitable considerations.

■ The Court declines to follow the *Miami Hospital* ruling that an executory contract may be assumed by implication through the debtor's receipt of benefits under the contract postpetition. Assumption under § 365(a) requires an unequivocal expression of intent to assume by the trustee or debtor in possession, as well as express approval by the court. *In re BDM Corp.*, 71 B.R. 142 (Bankr.N.D.Ill.1987); *see Matter of Whitcomb & Keller Mortgage Co.*, 715 F.2d 375 (7th Cir.1983). While § 365(a) does not set forth the manner by which assumption is to be effected, Bankruptcy Rule 6006(a) states that a proceeding to assume or reject an executory contract is governed by Bankruptcy Rule 9014, which provides that relief shall be requested by motion with reasonable notice and opportunity for hearing afforded to the opposing party. Upon consideration of § 365 along with Rules 6006(a) and 9014 and applicable case authority, the Court finds that assumption of an executory contract under § 365(a) requires the trustee or debtor in possession to file a formal motion to assume within the requisite time period. *In re Del Grosso*, 115 B.R. 136 (Bankr.N.D. Ill.1990); *In re BDM Corp.; In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850 (Bankr.N.D.Ill.1985). In the present case, Uly–Pak filed no such motion to assume Howard's employment contract, and there is no basis for the Court to grant retroactive approval as sought by Howard's estate.

■ The trustee contends that 11 U.S.C. § 365(d)(1) governs the issue of assumption or rejection of Howard's contract. Section 365(d)(1) provides that in a Chapter 7 case, if an executory contract is neither assumed nor rejected, it is deemed to be rejected 60 days after the order for relief.[5] A rejected

---

3. Section 365(a) provides:
   Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

4. Pursuant to 11 U.S.C. § 1107(a), the debtor in possession has the same authority as the trustee to assume or reject an executory contract.

5. 11 U.S.C. § 348(c) provides that when a Chapter 11 case has been converted to Chapter 7, as this case has been, the 60 day period begins to run on the date of the conversion rather than from the date of the order for relief.

contract is deemed to have been breached prepetition pursuant to § 365(g)(1).[6] Because the bankruptcy estate is not created until the petition is filed, damages for such a prepetition breach can never be necessary for the preservation of the estate and so cannot qualify as administrative expenses under § 503(b). The trustee argues that because Howard's employment contract was neither expressly assumed nor rejected, it should be deemed rejected 60 days after the conversion of this case from Chapter 11 to 7.[7]

■ This argument overlooks the fact that Howard's employment with the debtor terminated upon the sale of the debtor's assets on November 21, 1989, *see Miami Hospital,* 89 B.R. at 983, and his contract terminated along with his employment, thus foreclosing the possibility that the contract could be rejected. *See Gloria Mfg. v. Intern. Ladies' Garment Workers,* 734 F.2d 1020 (4th Cir.1984) (contract that expired by its own terms before debtor obtained court approval for its rejection could not thereafter be rejected).

Howard's contract cannot be construed as either assumed or rejected. Because an executory contract remains in effect until the debtor makes a decision to either assume or reject it, Howard's contract expired under its own terms when Howard's employment was terminated. *See Whitcomb,* 715 F.2d at 378. Thereafter, it could be neither assumed nor rejected by act, statute or court order. Whether Howard's claim is an administrative expense is, therefore, dependent upon the substance of the contractual provision.

## SEVERANCE PAY AS AN ADMINISTRATIVE EXPENSE

At the moment when Howard's employment was terminated, the estate incurred the cost of his severance pay by the terms of the contract. To determine whether that expense is to be treated as an administrative expense, Howard's contractual provision must be analyzed to determine whether the severance pay was a necessary cost of the preservation of the estate as required by § 503(b).

■ The policy underlying priority treatment for administrative expenses is to encourage creditors to extend credit that will enable a reorganization to succeed. *See Matter of Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984). To that end, a creditor's right to payment will be afforded first priority treatment only to the extent that the claim both (1) arises from a transaction with the debtor in possession and (2) is beneficial to the debtor in possession in the operation of the business. *Id.* at 586–87. In analyzing employee benefits under the *Jartran* test, the determinative factor is not when the right to payment matured but, rather, when it was earned. *In re Chicago Lutheran Hosp. Ass'n,* 75 B.R. 854, 856 (Bankr.N.D.Ill.1987).

■ Applying the test of *Jartran* to the instant facts, Howard's claim must be denied administrative expense priority. Howard's severance pay neither arose from a transaction with the debtor in possession nor benefited the debtor in possession in the operation of the business. Howard became eligible for severance pay immediately upon signing his employment contract.

**6.** Section 365(g) provides in pertinent part:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
> (1) if such a contract has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the petition:
> . . .
> Consistent with § 365(g)(1), 11 U.S.C. § 502(g) provides:

A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

**7.** This case was converted from Chapter 11 to 7 on February 14, 1990. Rejection would be deemed to have occurred on April 15, 1990.

Had his employment with Uly–Pak been terminated before its bankruptcy petition was filed, he would have been entitled to the full amount of his severance pay. In other words, Howard "earned" his severance pay prepetition. Such severance pay is not an administrative expense.

Howard's estate urges the Court to follow the holding of *In re Miami General Hospital, Inc.,* 89 B.R. 980 (Bankr.S.D.Fla. 1988). The court in that case was faced with an employment contract containing a severance pay provision remarkably similar to the one in the instant case. It provided that if the employee was terminated at any time for other than cause, she would be entitled to severance pay. There was no vesting period; the provision became effective when the contract was signed. That court held that the severance pay was an administrative expense.

The *Miami Hospital* court followed what has become the traditional analysis of severance pay as an administrative expense. That analysis originated in *In re Public Ledger,* 161 F.2d 762 (3d Cir.1947). Construing the predecessor to § 503(b), the court in that case was faced with two types of severance pay claimed by employees of a newspaper. Typographical Union members were parties to an employment contract that provided for severance pay in lieu of notice. The contract provided that if the employer laid off an employee without giving two days notice, the employee would be paid for those two days. For unknown reasons, the trustee in that case failed to provide the required two days notice, thereby incurring the cost of the severance pay. In contrast, members of the Newspaper Guild were subject to an employment contract that provided for severance pay based on length of service. For example, upon discharge, those employees would be entitled to two weeks pay if they had been employed more than a total of six months and less than one year. The *Public Ledger* court held that severance pay in lieu of notice was an administrative expense but

that severance pay based on length of service was an administrative expense only to the extent that it was earned during the trustee's management of the business. 161 F.2d at 771–73.

The distinction between the two categories of severance pay recognized by the *Public Ledger* court has become ossified into a rule of law. Lower courts now tend to apply the rule blindly, placing severance pay into one of the two categories while ignoring the rationale underlying the distinction.

Significantly, the rationale behind the disparity of treatment is identical to the test of *Jartran.* Severance pay in lieu of notice is an administrative expense because it is "earned" during the administration of the bankruptcy estate. The only requirement of an employee to receive severance pay in lieu of notice is that the employee be in good standing at the time of termination. The severance pay then arises from a transaction (termination without the agreed upon notice) with the debtor in possession and presumably benefits the debtor in possession. Otherwise, the debtor in possession would have provided the required notice. *See In re Mammoth Mart, Inc.,* 536 F.2d 950, 955 (1st Cir.1976).

In contrast, severance pay based on length of service is usually denied administrative expense status because it is "earned" prepetition. If an employee's vesting period ends before the employee files a bankruptcy petition, his right to severance pay neither arises from a transaction with the debtor in possession nor benefits the debtor in possession in any way.[8] *See* 536 F.2d at 955.

Without explanation, the *Miami Hospital* court construed the severance pay provision before it as one in lieu of notice, entitling the employee's claim under that provision to administrative expense priority. 89 B.R. at 984–85. However, the reasoning of *Miami Hospital* must be reject-

---

**8.** Of course, severance pay based on length of service would be "earned" during administration of the estate if an employee's vesting period overlapped with the administration of the bank-

ruptcy estate. In such a case, a proportionate amount of the severance pay would be an administrative expense.

ed. That court failed to recognize that the two categories it discussed do not exhaust all possible types of severance pay. The court forced the provision before it into an artificial category in which it did not belong.

Howard's provision for severance pay, like the provision in *Miami Hospital,* fits into neither category. Howard's severance pay is obviously not in lieu of notice. Nowhere in the contractual provision is notice mentioned. Under the contract, Howard would be entitled to severance pay upon his termination regardless of the amount of notice he was given. Neither is it based on Howard's length of service. There was no vesting period; by its terms, the severance pay provision became effective when the contract was signed on October 1, 1987. The severance pay provision in Howard's employment contract is so different from either of the provisions recognized in *Miami Hospital* that it should not be forced into either category. *See In re Selectors, Inc.,* 85 B.R. 843, 846 (9th Cir.BAP 1988).

Rather than blindly follow the dichotomy suggested by Howard's estate, the Court will apply the rationale that underlies that dichotomy. As previously discussed, under the *Jartran* test, Howard's claim for severance pay neither arose from a transaction with the debtor in possession nor benefited the debtor in possession in the operation of Uly–Pak's business. Therefore, Howard's severance pay is not a necessary expense of preserving the estate under § 503(b). It is entitled only to the status of a general unsecured claim.

Howard's estate has raised the argument that Howard was somehow induced to work for Uly–Pak after the bankruptcy filing by an expectation of receiving severance pay. His estate argues that it would now be inequitable to deny priority status to Howard's claim because his efforts were instrumental in preserving the estate.

■ There are two problems with this argument. First, the Court may only exercise its equitable powers within the confines of the Bankruptcy Code. *Northwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The provisions of § 503(b) leave no room for equitable considerations. The Court has already determined that under § 503(b), Howard's severance pay is not a necessary expense of preserving the estate.

Second, even if this Court were to consider the equities, they do not favor the claimant. Howard was the president and chief executive officer of Uly–Pak. He was the largest shareholder of the debtor corporation, owning approximately 25% of the outstanding shares. As an officer, Howard qualifies as an insider pursuant to 11 U.S.C. § 101(31)(B)(ii). In such a position, Howard had a potential conflict of interest involving the severance pay provision of his employment contract. It can hardly be refuted that Howard had some influence over decisions made by the debtor corporation. It may have been in the best interest of the debtor to reject the contract, relegating Howard's severance pay to an unsecured status automatically. Howard was in a position to persuade the debtor in possession to remain silent about his employment contract, leaving the issue of priority status for his claim open for later determination.

Regardless of Howard's potential influence, he could have requested that the Court order the debtor in possession to make a decision to either assume or reject his contract before the debtor's assets were sold.[9] Because Howard had that ability but failed to act, any argument that he was somehow misled by the debtor is simply unpersuasive.

There is a further policy consideration involved in denying administrative expense treatment to this type of severance pay. An employer on the verge of bankruptcy

---

**9.** 11 U.S.C. § 365(d)(2) provides:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of the plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

could insert such a severance pay clause into an employment contract, knowing in advance that the resulting severance pay would be granted priority status. By doing so, the employer could favor certain employees over other legitimate creditors. *See In re Selectors, Inc.,* 85 B.R. at 846. Such a result is contrary to the intent expressed by Congress in enacting §§ 507 and 726 of the Bankruptcy Code.

## ALLOWABLE AMOUNT OF THE CLAIM

■ Howard's claim for severance pay is entitled only to the status of a general unsecured claim. Pursuant to 11 U.S.C. § 502(b), the Court must still determine the dollar amount of the claim and allow that amount except to the extent that:

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; ...

11 U.S.C. § 502(b)(7).

The facts in this case present a straightforward application of the plain language of this section. Howard's claim for severance pay is "for damages resulting from the termination of an employment contract." *See In re Murray Industries, Inc.,* 114 B.R. 749, 752 (Bankr.M.D.Fla.1990). Therefore, under § 502(b)(7), the claim is limited to Howard's annual salary under the employment contract.

■ The trustee argues that Howard's allowable claim should be further reduced because his damages were mitigated by postpetition salary. However, Howard had no duty to mitigate his damages. Howard's claim is not for the breach of his employment contract but, rather, for severance pay contemplated by the terms of the

contract. Had Uly–Pak terminated Howard's employment outside of bankruptcy, and had Howard found employment immediately after, Uly–Pak would have been liable for the full amount of the severance pay specified by the contract. The amount of Howard's claim is, therefore, determined under § 502(b)(7) without regard to Howard's actual damages, including any mitigation.

## CONCLUSION

Because Howard's claim neither arose from a transaction with the debtor in possession nor benefited the debtor's estate, it cannot be considered a necessary expense of the preservation of the estate. Therefore, the claim is entitled only to general unsecured status. Further, pursuant to § 502(b)(7), the claim is limited to $60,000, the equivalent of one year of Howard's salary under his employment contract.