**In re YARN LIQUIDATION, INC.,
formerly SCT Yarns, Inc.,
Debtor.**

**Bankruptcy No. 95–11611.**

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 18, 1997.

Richard C. Kennedy, Richard T. Klingler, Kennedy, Fulton, Koontz, & Farinash, Chattanooga, TN, for Debtor.

Richard D. Greer, Birmingham, AL, for Salaried Employees.

## MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

In this liquidating Chapter 11 case, the court has been called upon to determine the priority of severance pay claims filed by fourteen former employees of the debtor, SCT Yarns, Inc. The debtor's confirmed Chapter 11 plan generally provides for payment of unsecured claims in the order of priority set by § 507 of the Bankruptcy Code 11 U.S.C. § 507. For convenience, the court will refer to the claimants as "the employees" and to SCT Yarns as "the debtor."

Three of the employees were laid off on the date the debtor filed its bankruptcy petition. The other eleven were terminated at various times during the Chapter 11 case. All the employees were subject to a contract entitling them to severance pay. The court must decide the extent to which the severance pay claims are entitled to priority under § 507. 11 U.S.C. § 507.

Two different priorities may apply. Section 507(a)(3) gives third priority to employee compensation earned within 90 days before the date of filing of the bankruptcy petition. The bankruptcy petition was filed on April 28, 1995. Thus, the 90 days began with and included January 28, 1995 (4 days in January, 28 days in February, 31 days in March, and 27 days in April). This priority is limited to $4,000 for all wages, salaries, commissions, vacation pay, severance pay, and sick leave pay earned within 90 days before the date of bankruptcy. Severance pay is not allowed within this priority to the extent it would allow the total received by an employee to exceed the $4,000 limit. It does not appear that any of the employees will exceed the limit; however, there is no proof presently before the court whether any of them have received post-petition payment of other pre-petition wages, salaries, etc.

Section 507(a)(1) gives first priority to administrative expenses. Section 503(b)(1)(A) of the Bankruptcy Code defines administrative expenses as "the actual, necessary costs and

expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. §§ 507(a)(1) & 503(b)(1)(A).

To the extent the claims are not entitled to priority under § 507, they are payable as general unsecured claims. 11 U.S.C. § 726(a)(2). The debtor has not objected to the claims on any ground other than priority.

The employment contract provides that each employee's severance pay will depend on the length of his or her employment. The employees who were terminated during the bankruptcy case contend that all their severance pay is an administrative expense because it became due during the bankruptcy case after they were laid off. With regard to severance pay measured by the length of service, this rule is followed in the Second Circuit. *Straus–Duparquet, Inc. v. Local Union No. 3, International Brotherhood of Electrical Workers*, 386 F.2d 649 (2d Cir. 1967). It is the minority rule.

The majority of courts disagree. *In re Roth American, Inc.*, 975 F.2d 949 (3d Cir. 1992); *Lines v. System Board of Adjustment No. 94, Brotherhood of Railway, Airline & Steamship Clerks (In re Health Maintenance Foundation)*, 680 F.2d 619 (9th Cir. 1982); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir.1976); *In re Public Ledger, Inc.*, 161 F.2d 762 (3d Cir.1947); *Rawson Food Services, Inc. v. Creditors' Committee (In re Rawson Food Services, Inc.)*, 67 B.R. 351 (M.D.Fla.1986); *In re Uly–Pak, Inc.*, 128 B.R. 763 (Bankr.S.D.Ill.1991); *In re Ohio Corrugating Co.*, 115 B.R. 572 (Bankr. N.D.Ohio 1990) *rev'd on other grounds, sub nom. United Steelworkers of America v. Ohio Corrugating Co.*, 1991 WL 213850 (N.D.Ohio Jan. 3, 1991); *In re Chicago Lutheran Hospital*, 75 B.R. 854 (Bankr.N.D.Ill. 1987); *In re Northwest Engineering Co.*, 43 B.R. 603 (Bankr.E.D.Wis.1984).

■ The majority rule is based on the purpose of the administrative expense priority. Generally, a claim for an administrative expense must be based on a benefit furnished to the debtor *during the bankruptcy case*. *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954–955

(1st Cir.1976) (decided under prior bankruptcy statutes). For example, an employee who works during the bankruptcy case furnishes the employee's labor as a benefit to the debtor. The employee has an administrative expense claim for compensation owed for the work performed during the bankruptcy case.

The majority rule does not preclude severance pay based on length of service from ever becoming an administrative expense, as suggested by the debtor's brief. The cases focus on whether the severance pay was earned before or during the bankruptcy case. Whether the severance pay was earned before or during the bankruptcy case depends on whether it arose from services provided by the employee before or during the bankruptcy case. Severance pay based on length of service is an administrative expense *only* to the extent it was earned by service during the bankruptcy case. It is not an administrative expense to the extent it was earned by service before bankruptcy. *Compare Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir.1976); *In re Public Ledger, Inc.* 161 F.2d 762 (3d Cir.1947), *and Lines v. System Board of Adjustment No. 94, Brotherhood of Railway, Airline & Steamship Clerks (In re Health Maintenance Foundation)* 680 F.2d 619 (9th Cir.1982); *In re Uly–Pak, Inc.*, 128 B.R. 763 (Bankr.S.D.Ill.1991).

Likewise, when severance pay is based on length of service, it is entitled to the third priority under § 507(a)(3) only to the extent it was earned within 90 days before the date of bankruptcy. *In re Roth American, Inc.*, 975 F.2d 949 (3d Cir.1992); *Jeannette Corp. v. Gilardi (In re Jeannette Corp.)*, 118 B.R. 327 (Bankr.W.D.Pa.1990).

■ The court agrees with the majority rule and will apply it in this case. With regard to all fourteen employees, two questions arise regarding whether they have third priority claims under § 507(a)(3). First, did they earn severance pay within 90 days before the date of bankruptcy? Second, if they earned severance pay during this period, how can the amount be calculated?

With regard to the employees who continued to serve during the bankruptcy case, the

questions are basically the same. Did they earn severance pay during their post-petition employment, and if so, how can the amount be calculated?

■ A third question arises with regard to post-petition employment. Assuming the employees earned severance pay for their post-petition employment, was the severance pay an actual, necessary cost or expense of preserving the bankruptcy estate? The severance pay must meet this requirement in order to be an administrative expense. 11 U.S.C. § 503(b)(1)(A). The trustee has not argued against the employees on this point. *See In re Public Ledger, Inc.* 161 F.2d 762 (3d Cir.1947); *In re Chicago Lutheran Hospital Association,* 75 B.R. 854 (Bankr. N.D.Ill.1987).

■ Whether the employees earned severance pay during a particular period of time depends on the meaning of the contract with regard to severance pay. The claimants here are salaried employees. The contract's provisions for severance pay varied slightly according to whether a salaried employee was or was not exempt from federal wage and hour laws. For exempt salaried employees, the contract provided severance pay at the following rates:

1. One (1) week of pay for each year of service up to ten (10) years. [One (1) week of pay equals annual salary divided by 52].

2. One-half (1/2) week of pay for each year of service over ten (10) years. [One-half (1/2) week of pay equals annual salary divided by 104].

3. Minimum of four (4) weeks pay with two or more years service, two (2) weeks pay with less than two years served.

4. Payment will be sent at regular payday each month until severance pay is completed.

5. Years of service will be rounded upward, if six (6) months or more, and downward, if less than six (6) months.

Non-exempt salaried employees did not have a right to severance pay until they had been employed for two years. The court need not be concerned with this difference between the treatment of exempt and non-exempt employees because all the employees were well beyond two years of service at the time of the debtor's bankruptcy. In fact, all the employees had more than nine years service at the time of the debtor's bankruptcy.

This fact also makes another aspect of the severance pay contract irrelevant to the court's decision. As a general rule, employees earned severance pay at the rate of one week's pay or one-half week's pay for each year of service. The contract, however, accelerated the right to severance pay for employees with less than 3 years, 6 months of service. They became entitled to four weeks' severance pay before reaching that point. The court, however, need not be concerned with the accelerated rate. The general rule applied to all the employees during the time periods relevant to priority under § 507(a)(1) or (a)(3).

The following table shows how the right to severance pay was earned under this system:

| Amount of service when terminated | Severance pay |
| --- | --- |
| < 2 yrs. (exempt employees only) | 2 weeks |
| 2 yrs., but < 4 yrs., 6 mos. | 4 weeks |
| 4 yrs., 6 mos., but < 5 yrs., 6 mos., | 5 weeks |
| 5 yrs., 6 mos. but < 6 yrs., 6 mos. | 6 weeks |
| 6 yrs., 6 mos., but < 7 yrs., 6 mos. | 7 weeks |
| 7 yrs., 6 mos., but < 8 yrs., 6 mos. | 8 weeks |
| 8 yrs., 6 mos., but < 9 yrs., 6 mos. | 9 weeks |
| 9 yrs. 6 mos., but < 10 yrs., 6 mos. | 10 weeks |
| 10 yrs., 6 mos., but < 11 yrs., 6 mos. | 10.5 weeks |
| 11 yrs., 6 mos., but < 12 yrs., 6 mos. | 11.5 weeks |
| [and so on . . .] | |

The court concludes that the employees earned severance pay over time under this contract and the amount earned at any one point can be calculated. Two examples will explain the court's reasoning.

▌5] Consider the first employee, Lois Brittain. (The employees have been listed in alphabetical order in the pleadings.) Ms. Brittain reached 17 years, 6 months less than two weeks before bankruptcy. Reaching this mid-year mark entitled her to be treated as if she had 18 years employment, and that entitled her to an additional one-half week's severance pay. Ms. Brittain might contend that the increase was earned in the 90 days before bankruptcy because she became entitled to it then. The court does not agree. The right to the additional severance pay ma-

tured when she reached 17 years, 6 months in April 1995, but the right was being earned over the one-year period from 16 years, 6 months to 17 years, 6 months.

Consider the fourth employee on the list, Vernon Cole. Mr. Cole reached 15 years on February 25, 1995. The debtor. might contend that Mr. Cole earned no severance pay during the 90 days before bankruptcy because he did not become entitled to another one-half week's severance during that time. The argument is that Mr. Cole would not have earned any more severance pay until he reached 15 years, 6 months in August 1995.

■ Of course, this argument contradicts the court's reasoning with regard to Ms. Brittain. According to this argument, Ms. Brittain would have earned the additional one-half week's severance pay within the 90 days before bankruptcy, when she reached the mid-year mark that entitled her to the additional severance pay. The court reasoned, however, that Ms. Brittain earned the additional one-half week's severance pay over the preceding year of employment. This reasoning more accurately reflects the meaning of the contract. Ms. Brittain did not earn the additional severance pay entirely within the 90 days before bankruptcy simply because she reached the mid-year mark during that time. Likewise, Mr. Cole earned severance pay within the 90 days before bankruptcy even though he did not reach a mid-year mark during that time. *Northwest Engineering Co., United Steelworkers of America*, 863 F.2d 1313 (7th Cir.1988); *In re Public Ledger, Inc.* 161 F.2d 762 (3d Cir. 1947).

. The court concludes that all the employees earned severance pay within 90 days before bankruptcy, and the amount they earned may be a third priority claim under § 507(a)(3). The court says the amount "may be" a third priority claim because the priority is limited to $4,000 for the total compensation, and again, the evidence does not indicate how much of the $4,000 priority remains unpaid to the employees.

■ The employees who were employed during the bankruptcy case also earned severance pay during that time, and the amount they earned is entitled to first priority as an administrative expense. *In re Roth American, Inc.,* 975 F.2d 949 (3d Cir.1992); *Jeannette Corp. v. Gilardi (In re Jeannette Corp.),* 118 B.R. 327 (Bankr.W.D.Pa.1990).

The next problem is calculating the amount of severance pay earned during either period. The definitions in the employment contract control the meaning of one week's pay and one-half week's pay. The problem is determining the rate at which severance pay was earned over time. More than one method can be used.

The court could treat one year of service as 52 weeks of 5 work days (Monday–Friday). To calculate the amount of severance pay earned in a particular period, the court would divide the total number of weekdays in the period by 260 and multiply the result by one-half week's pay.

Another method uses the total number of days in the period divided by the number of days in a year. For example, if one of the employees worked 30 days during the bankruptcy case, then he or she would earn 30/365 of one-half week's pay. *See* 4 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 507.05 at 507–34 (15th ed.1997).

The debtor's brief states that it used another method with regard to priority under § 507(a)(3). It treated the priority period as one-fourth of a year (three months out of twelve). According to this method, the employees earned severance pay equal to one-fourth of one-half week's pay within 90 days before bankruptcy.

The court will first calculate the amount earned during the priority period set by § 507(a)(3). Using the stipulations and other pleadings, the court has been able to determine the weekly salary of each employee. The trustee used these weekly salaries to calculate the severance pay that is entitled to third priority under § 507(a)(3). Each employee was earning severance pay at the rate of one-half week per year. This includes Ms. Newton even though she had been employed by the debtor less than ten years at the time of bankruptcy. She reached 9 years, 6 months shortly before bankruptcy, and from

that point on, an employee earned severance pay at the rate of one-half week per year.

The court has treated the date of filing as a pre-petition work day. Some of the employees may have worked on that day after the petition was filed at 4:21 p.m., but the employees have not submitted any evidence to prove it. This means that the priority period was actually 91 days (the 90 days before the date of filing plus the date of filing). Since the employees were earning severance pay per year of employment the court can use 365 days as the denominator and 91 days as the numerator of a fraction to determine how much severance pay was earned during the priority period. Each employee would have earned 91/365 of one-half week's pay.

The trustee used one-fourth instead of 91/365. He ignored the 1/1460 difference between the two fractions. The court will do the same. The difference can be ignored as *de minimis*. Therefore, the court's calculation agrees with the trustee's. Each employee earned severance pay during the priority period equal to one-eighth of one week's pay. The amounts calculated by the trustee are the correct amounts of severance pay earned during the priority period set by § 507(a)(3).

The court will *not* enter an order that the employees are entitled to third priority claims in these amounts because the parties have not revealed whether these amounts can be allowed as a third priority without exceeding the $4,000 limit set by § 507(a)(3).

■ The trustee did not calculate any amounts entitled to first priority as an administrative expense priority. The court has calculated the amounts as follows. The court assumes the weekly salaries did not change during the bankruptcy case. The court uses days of employment *after* April 28, 1995 as the numerator and 365 as the denominator of the fraction and multiplied it by one-half week's salary. This gives the amount of severance pay earned post-petition. The formula becomes:

$$(\text{Days Employed} \times \text{Weekly Salary}) \div 730.$$

The court has included the day of termination as a day of employment, since the employees presumably went to work on that day. The court has also treated Mr. Lane as having been employed through May 1995 since that seems to be the meaning of the stipulation with no specific date of termination. The following table shows the results:

| EMPLOYEE | DAYS | WEEKLY SALARY | FIRST PRIORITY |
|---|---|---|---|
| Brittain | 17 | $344.40 | $ 8.02 |
| Carter | 10 | $479.60 | $ 6.57 |
| Cole | 33 | $675.20 | $30.52 |
| Goss | 33 | $496.00 | $22.42 |
| Hightower | 33 | $598.80 | $27.07 |
| Houston | 28 | $459.60 | $17.63 |
| Kirk | 33 | $507.20 | $22.93 |
| Lane | 33 | $469.20 | $21.21 |
| Newton | 48 | $477.60 | $31.40 |
| Nicholson | 34 | $533.60 | $24.85 |
| Oliver | 33 | $559.60 | $25.30 |

The court can enter an order that the employees have claims entitled to first priority as an administrative expense in the amounts given above.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.