In re SELECTORS, INC., Debtor.

Richard C. DULLANTY, Appellant,

v.

SELECTORS, INC., Appellee.

BAP No. EW 87–1586 JAsMo.
Bankruptcy No. 86–01435–K11.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 1987.

Decided March 31, 1988.

John F. Bury, Spokane, Wash., for appellant.

Bruce R. Boyden, Spokane, Wash., for appellee.

## OPINION

Before JONES, ASHLAND and MOOREMAN, Bankruptcy Judges.

JONES, Bankruptcy Judge:

### FACTS

The appellant, Richard Dullanty, is an attorney licensed to practice in the state of Washington. In early 1986, Dullanty became in-house counsel for the debtor, Selectors, Inc. Selectors was not in bankruptcy at that time. Dullanty's employment by Selectors was governed by an employment contract executed on February 20, 1986. Under the contract, Dullanty was to serve as Selectors' counsel until at least April 1, 1987, although his employment could be terminated by either party on two weeks written notice. The contract also contained the following clause:

PARACHUTE CLAUSE: A severance bonus of $25,000.00 will be paid by the Corporation if this Employment Agreement is terminated by either party within 90 days of any of the following:

1. In the event that a controlling interest in the corporation is acquired by any person or corporation other than any persons currently or officers [sic] of the corporation; or

2. Termination of full-time employment, as an officer of ROBERT A. SPICKARD [president of Selectors] for any reason.

On April 17, 1986, less than two months after Dullanty's employment contract was executed, Selectors was acquired by International Basic Resources, Inc. (IBR). IBR accountants soon discovered that Selectors had financial problems and Selectors filed a Chapter 11 petition on May 12, 1986. The next day, Selectors' new CEO gave Dullanty verbal notice of his termination and on May 16, Dullanty sent a formal letter of termination to Selectors' new president. On May 23, 1986, Selectors' president wrote Dullanty asking him to provide a written summary of all Selectors matters in which Dullanty was involved. The May 23 letter also indicated that Dullanty should provide a statement for his services in preparing the summary which would be submitted to the bankruptcy court for approval. Dullanty provided the summary and met with Selectors' general counsel to wrap up his involvement in Selectors matters.

Dullanty then filed an application for administrative expenses in the amount of $27,385. After a hearing, the court concluded (1) that IBR's acquisition of Selectors was an event contemplated under the parachute clause of the contract; (2) that Dullanty's May 16 letter terminated the contract effective June 2; (3) that Dullanty could recover as an administrative expense for his services in wrapping up Selectors matters; and (4) that the parachute clause did not give rise to an administrative expense.[1] Dullanty appealed.

### STANDARD OF REVIEW

■ There are no factual issues in dispute. The only question is whether the parachute clause in the employment contract gave rise to an administrative expense. This is a question of law which is reviewable de novo. *See In re Pacific Far East Line, Inc.*, 713 F.2d 476, 478 (9th Cir.1984).

### DISCUSSION

■ Dullanty argues that the bankruptcy court erred by concluding that the severance pay due under the parachute clause does not constitute an administrative expense under Bankruptcy Code section 503(b)(1)(A). 11 U.S.C. § 503(b)(1)(A). That section provides that administrative expenses include "the actual, necessary costs and expenses of preserving the es-

---

1. Dullanty subsequently moved for payment as an administrative expense of amounts due for wrapping up his involvement in Selectors matters. The record does not indicate whether this motion has been decided.

tate, including wages, salaries, or commissions for services rendered [postpetition]; ...."

In the Ninth Circuit, the law is clear regarding whether severance pay is an administrative expense. The rule is that "pay at termination in lieu of notice" is considered an administrative expense, but that "pay at termination based upon length of employment" is not. *See In re Tucson Yellow Cab Co.*, 789 F.2d 701, 703 (9th Cir.1986); *In re Pacific Far East Line*, 713 F.2d at 478; *In re Health Maintenance Foundation*, 680 F.2d 619, 621 (9th Cir. 1982). In adopting this rule, the Ninth Circuit followed the First and Third Circuits, *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976); *In re Public Ledger Inc.*, 161 F.2d 762, 771 (3d Cir.1947), and rejected the view of the Second Circuit that both types of severance pay constitute administrative expenses. *See Straus–Duparquet, Inc. v. Local 3, Int'l. Bhd. of Elec. Workers*, 386 F.2d 649, 651 (2d Cir. 1967).

In the *Health Maintenance* case, the court adopted the following reasoning of the First Circuit as a basis for using this rule:

> When the claim is based upon a contract between the debtor and the claimant, ... a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the ... [trustee] in the operation of the business.
>
> .     .     .     .     .
>
> If an employment contract provides that all discharged employees will receive severance pay equal to their salaries for a specified period, the consideration supporting the claim—being an employee in good standing at the time of the [filing] —will have been supplied during the arrangement, and the former employee will be entitled to priority.... Here, the sit-

uation is quite different. Because the amount of the severance pay claims depends upon the length of employment, the consideration supporting ... [the employees'] claims was the services performed for ... [debtor] over the entire period of ... employment. Since no part of their present claims arise [sic] from services performed for the ... [trustee], no portion of appellant's claims may receive section 65(a)(1) priority.

*Mammoth Mart*, 636 F.2d at 954–55 (cited with approval in *Health Maintenance*, 680 F.2d at 621).

Despite the apparent simplicity of the severance pay rule, the result in the instant case is not obvious. First, the parachute clause in the case at bar is not like the provisions in the cases cited above. In those cases, the severance pay clauses provided compensation based upon what the employee would have earned during a specified period prior to termination. *See Tucson Yellow Cab*, 713 F.2d at 703 (two weeks notice or two weeks pay); *Health Maintenance*, 680 F.2d at 620 (specified number of days pay based on length of employment); *Mammoth Mart*, 536 F.2d at 952 (one weeks salary per year of employment); *Straus–Duparquet*, 386 F.2d at 650 (one or two weeks pay); *Public Ledger*, 161 F.2d at 771 (specified number of weeks pay depending on the length of employment).[2]

The parachute clause in the instant case is unlike any of these provisions: It does not provide compensation based upon salary during employment; nor does it mention or base compensation upon any notice period or length of employment. The trial court concluded that the parachute clause did not give rise to an administrative expense claim because it was more like a severance pay provision based upon length of service than one based upon lack of notice. The court reasoned that Dullanty's consideration for the parachute clause was giving up his law practice; that this was a

---

**2.** The only exception is *Pacific Far East Line,* where employers were required to contribute to employee benefit plans each month based upon the number of days worked during the prior month. 713 F.2d at 477. The debtor had failed to make payments *due* post-petition, that were "computed with reference to hours worked by employees prior to the bankruptcy proceedings." *Id.* at 479.

846

pre-petition event; and that it provided Selectors with no post-petition benefit. The court found that Selectors benefited from Dullanty's efforts in wrapping up his interest in Selectors matters and held that he could seek compensation for those efforts as an administrative expense. The court noted that giving Dullanty two weeks of severance pay might be appropriate in light of the two weeks notice provision, but it denied the application with respect to the $25,000 claim.

In our view, the parachute clause in the instant case is so different from the severance pay provisions addressed in the Ninth Circuit cases, that it should not be forced into either category. Clearly, the parachute clause is not "pay at termination based upon length of employment." Dullanty got the $25,000 regardless of how long he served as Selectors' counsel. Just as clearly, however, it is not "pay at termination in lieu of notice." Nowhere does the provision mention notice. In fact, Dullanty was entitled to the $25,000 even if *he* terminated the contract within 90 days of a takeover of Selectors. Certainly, Dullanty was not entitled to notice of termination initiated by himself.

We conclude therefore that the Ninth Circuit's severance pay rules are inapplicable to parachute clauses such as the one here. Instead, such clauses should simply be subjected to analysis under section 503(b)'s standards: Does the clause give rise to an actual and necessary expense of preserving the estate? Here, the parachute clause does not. As consideration for the clause, Dullanty gave up his law practice and kept himself available to serve as counsel for Selectors. Immediately post-petition, however, Selectors' new management terminated Dullanty. Therefore, Dullanty no longer needed to keep himself available to work for Selectors. The work Dullanty performed wrapping up Selectors matters was done pursuant to a separate agreement. The trial court properly noted that Dullanty was entitled to compensation for that time as an administrative expense. Dullanty's consideration for the parachute clause—giving up his law practice—did not benefit the estate. Ac-

cordingly, the parachute clause does not give rise to an administrative expense.

We further note that, as a policy matter, a parachute clause like one here should not give rise to an administrative expense. To so hold would allow employers contemplating bankruptcy to insert such clauses in employment contracts thereby favoring certain employees at the expense of legitimate creditors. Here, for instance, the appellee claims that Dullanty knew Selectors was on the verge of being taken over when the employment contract was executed. The appellee appears to suggest that there may have been an improper motive for including the parachute clause. The record before us does not indicate whether Dullanty was aware of a pending takeover. This allegation, however, points out the potential for abuse of parachute clauses in the bankruptcy context.

Finally, we reject Dullanty's assertion that treating the parachute clause as an administrative expense would encourage him to continue working for the debtor post-petition. If anything, it would discourage him from doing so. Dullanty was entitled to the $25,000 if there was a takeover and if, within ninety days, his employment was terminated. Thus, Dullanty could get the $25,000 only by quiting or being fired within 90 days. This hardly encouraged him to continue working for Selectors.

Accordingly, we AFFIRM the trial court's order denying Dullanty's administrative expense claim.