In re The **LEVINSON STEEL COMPANY, Auxier Scott Supply Company, Debtors.**

**Bankruptcy Nos. 90–00631, 90–00632. Motion No. 90–2700–M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 1, 1990.

Paul M. Singer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for debtors.

Joseph F. McDonough, Manion, McDonough & Lucas, P.C., Pittsburgh, Pa., for Bank of New England.

Kevin C. Hansen, Meyer, Unkovic & Scott, Pittsburgh, Pa., for the Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the Levinson Steel Company's (hereinafter "Levinson") Motion for Confirmation of Existing Severance Policy, and to Provide Key Employee Severance Arrangements.[1] On March 7, 1990, Levinson filed a petition for relief under Chapter 11 of the Bankruptcy Code. Levinson continues in the management of its business and property as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Prior to the filing of its bankruptcy petition Levinson maintained a Severance Pay Plan for all full-time salaried employees based upon length of service. Payment was calculated by multiplying the individual's base rate of pay for one week (excluding overtime, bonuses and commissions) by the number of the individual's whole years

of continuous service with Levinson. Members of the management staff were entitled to 150% of the number produced by the foregoing calculation.

Levinson requests confirmation of its existing Severance Plan for its 282 employees along with individual adjustments to the Plan for four members of its management staff, referred to by Levinson as "Key Employees." The effect of the request would be to treat all severance pay claims as Chapter 11 administrative expenses, whether the services entitling the employee to the severance benefit were performed pre-petition or post-petition. A unique adjustment was requested for the Chief Financial Officer, Larry McKee, which will be dealt with separately.

### I. General and Key Employees

■ Concerning both the general and key employees the issue is whether a pre-petition severance pay policy based upon length of an employee's service can be converted to a post-petition policy thereby entitling employees who might be terminated to full payment of their severance pay as an administrative claim. There is no case law directly on point in this Circuit but in an analogous situation involving a labor union contract the United States Court of Appeals for the Third Circuit has said that any such claim would not be afforded priority treatment, in full, as an administrative expense. *In Re Public Ledger*, 161 F.2d 762 (3d Cir.1947).

The severance pay plans of Levinson and *Public Ledger* are similar in that only those employees who serve for a certain period of time are entitled to severance pay and the amount thereof varies with the length of the employee's service. The holding of *In Re Public Ledger* is that only that portion of the severance pay claim which can be apportioned to services performed after the filing of the petition may be afforded priority treatment as an administrative expense. All other claims for severance pay must be treated as pre-petition

---

**1.** Also included in this motion was Confirmation of the Existing Relocation Policy which was approved in an earlier order.

unsecured claims except for the portion of the claim entitled to payment under the former § 64a(1) of the Bankruptcy Act, now 11 U.S.C. § 503(b)(1)(A) (*i.e.*, the actual and necessary costs and expenses of preserving the estate post-petition). The court reasoned that sufficient consideration is lacking to support a request that the entire severance payment receive priority status as an administrative expense. Therefore, only the portion of an employee's claim which arises from services performed for the Debtor-in-Possession may receive administrative priority status under § 503(b)(1)(A).[2]

The Levinson plan ties the amount of severance pay directly to the length of employment. Thus, the consideration supporting any severance pay claim would be the services performed for Levinson over the entire period of employment—prepetition and/or postpetition. *See also, In Re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976).

■ Levinson argues that converting its current severance pay policy to a post-petition policy is required as an incentive to retain qualified employees whose willingness to continue working during the Chapter 11 reorganization is alleged to be sufficient consideration to support the change. This Court rejects the contention. In *Matter of Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982),[3] the HMF employees argued that the trustee benefitted from their willingness to continue working during the contemplated Chapter 11 reorganization, and that this willingness to work constituted the requisite consideration necessary to justify the requested priority status for severance pay claims. The court held that willingness to continue work post-petition did not increase the consideration supporting priority status for the severance pay claims. All the consideration necessary for those claims had accrued before bankruptcy occurred.

In addition, many of Levinson's employees, including the four "key employees," have been with the company for years. There has been no showing that employees have left or will leave Levinson's employ voluntarily with or without the requested confirmation of the severance pay plan.

## II. Larry McKee

■ Larry McKee was hired by Levinson as the Chief Financial Officer shortly before the filing of its bankruptcy petition for the purpose of assisting the company in its restructuring and/or in the refinancing of its debt service. His situation is distinguishable from that of the general employees and four key employees because the severance pay plan negotiated for McKee, pre-petition, was not based upon length of service. It was negotiated in recognition of the fact that McKee, in all likelihood, would have a brief tenure with the company. In a letter agreement not formally incorporated into the proposed retention agreement, severance pay was deemed to be a lump sum payment equal to one-half of McKee's annual salary. Under *Public Ledger* if severance pay accrues regardless of length of service, it is treated as wages wholly earned and accrued under the trustee's management and, therefore, is entitled to priority as such.

This Court finds that the proposed retention agreement and severance pay plan for Larry McKee is a necessary incentive to his continued employment at Levinson. From testimony, it appears that a severance pay provision was an important part of the bargain between McKee and Levinson Steel and was calculated in light of McKee's personal and family circumstances as well as his work experience.

Therefore we approve the severance plan for Larry McKee as one entitling him to priority treatment as a post-petition claimant. However, the agreement between Levinson and McKee also provides that he is entitled to a severance payment from

---

**2.** Of course 11 U.S.C. § 507(a)(3), which establishes a priority for an amount earned within the 90 days immediately prior to the filing of the bankruptcy petition to a maximum of $2,000.00 also would apply.

**3.** The Ninth Circuit is in accord with the Third Circuit view of severance pay based on length of employment.

this estate even if he is retained by Levinson's successor through or following a plan of reorganization. This portion of the agreement is disapproved. The payment will be authorized only if Debtor requests McKee to leave its employ other than for cause.

In view of the foregoing, the Court will enter an order authorizing Debtor to enter into the Retention Agreement with Larry McKee as modified. The Court will also enter an order denying the requested post-petition confirmation of the existing severance policy for the general and key employees inasmuch as the relief requested is contrary to law.

An appropriate order will be entered.