**In re M GROUP, INC., TMGH, Inc., M Sales Corp., Inc., Debtors.**

No. 00–01936.

United States Bankruptcy Court, D. Delaware.

Nov. 2, 2001.

Maria A. Sawczuk, Esq., Wilmington, DE, for Debtors.

Victoria W. Counihan, Esq., Leon R. Barson, Esq., and Mark Drasnin, Esq., Philadelphia, PA, for the Creditors' Committee.

Alejandro Oliveras, Esq., San Juan, PR, for Maria del Pilar Carames.

Laurie S. Silverstein, Esq., Wilmington, DE, for Richard Fields.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Before the court are objections to claims. The Creditors' Committee objects to an administrative priority claim for severance pay filed by Richard Fields, the former Executive Vice President, Sales (as amended, Executive Vice President International) of Debtor (Claim No. 00165).[2] Debtors join in the Objection of the Official Committee of Unsecured Creditors to Claim No. 00165 Filed by Richard Fields (hereafter "Creditors' Committee's Objection to Fields' Claim"). Debtors object to an administrative priority claim and an unsecured claim for salary, vacation and severance pay filed by former employee Maria del Pilar Carames (Claim Nos. 00178, 00179). *See* Debtors' Objection to Claim Nos. 00178 and 00179 Filed by Maria Del Pilar Carames, Docket No. 575 (hereafter "Debtors' Objection"). Ms. Carames' administrative and unsecured claims are identical. We will address each of the assertions separately.

*Case Law Governing Status of Severance Pay Claims*

Section 503(b)(1)(A) of the Bankruptcy Code provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

On May 12, 2000, an order was issued changing the caption and consolidating the cases: The Monet Group, Inc., Bankruptcy No. 00–01936, The Monet Group Holdings, Inc., Bankruptcy No. 00–01937, and Monet Sales Corporation, Bankruptcy No. 00–01938 to The Monet Group, Inc., et al., jointly administered at Bankruptcy No. 00–1936. On August 14, 2000, the caption was amended to reflect the change of names of the Debtors, that is, M Group, Inc., TMCH, Inc., and M Sales Corp.

2. Mr. Fields' proof of claim also included a claim for reimbursement of benefits and costs for out-placement services under his employment contract. He has obtained new employment and consequently has withdrawn those portions of his claim related to benefits and out-placement services. Response of Richard Fields to Objection of the Official Committee of Unsecured Creditors to Claim No. 00165 Filed by Richard Fields, Docket No. 572, at 3, n.3.

services rendered after the commencement of the case...."

The seminal case in the Third Circuit dealing with priority of severance benefits is *In re Public Ledger*, 161 F.2d 762 (3d Cir.1947). *Public Ledger* involved a newspaper that filed under Chapter X of the Chandler Act, predecessor to the current Bankruptcy Code. Two months postpetition the court ordered that the business be discontinued and employees terminated. There were two contracts at issue. The contract with the Typographical Union required, *inter alia*, that two days notice of termination be given. The bankruptcy trustee failed to give the notice. The court found that the two-day notice period constituted a wage period and claims made under that contract would constitute administrative claims of the estate if they represented actual and necessary expenses of the estate. The court found that the trustee had assumed the employment contract and that the work done during the two-day period was actual and necessary. Therefore, claims arising under that provision of the Typographical Union contract were administrative claims.

The second contract was with members of the Newspaper Guild. That contract provided that if the employee was terminated without cause, the employee would be entitled to payment for a certain number of weeks based on the employee's length of service. The court held that the trustee and the debtor's employees had adhered to the contract postpetition and, because the severance provision was based on length of service, only the portion of severance earned during the prepetition priority period was entitled to priority status. The portion earned postpetition was an administrative expense.

*Public Ledger* is often cited for the proposition that severance pay claims based on length of service contracts are entitled to administrative expense status for that portion of the severance pay earned postpetition. It is also relied on for the proposition that severance pay claims based on contracts that contain termination in lieu of notice clauses are entitled to administrative status. *See, e.g., In re Roth American, Inc.*, 975 F.2d 949 (3d Cir.1992); *In re Wean Inc.*, 171 B.R. 528 (Bankr.W.D.Pa.1994); *In re Levinson Steel Co.*, 117 B.R. 194 (Bankr.W.D.Pa. 1990). However, the severance pay provisions in the matter before us do not fit within the length of service category or the termination in lieu of notice category.

### Richard Fields' Claim

The relevant events and dates related to Mr. Fields' claim are:

| | |
|---|---|
| 10/31/97 | Richard Fields signed an employment agreement with The Monet Group Holdings, Inc. and The Monet Group, Inc. which agreement recites an end of term as of 12/31/00. The agreement was amended prepetition on April 1, 1999, extending the employment term to December 31, 2001.[3] |
| 5/11/00 | Debtors filed Chapter 11. |
| 7/26/00 | Monet terminated Richard Fields[4] |
| 8/9/00 | Order entered authorizing Debtors to reject Fields' employment contract as of July 26, 2000. |
| 8/11/00 | Richard Fields filed administrative claim for $270,416.[5] |

Paragraph 7(c) of the employment contract is captioned "Termination Without Cause or in the Event of Constructive

---

3. The amendment, captioned "Annex A", also changed Mr. Fields' title from "Executive Vice President Sales" to "Executive Vice President International". *See* Exhibit B to Exhibit A to Creditors' Committee's Objection to Fields' Claim.

4. Response of Richard Fields to Objection of the Official Committee of Unsecured Creditors to Claim No. 00165 Filed by Richard Fields, ¶ 5, Docket No. 572.

5. The claim includes the following amounts:
1. One year Basic Salary $250,000

Termination". It provides in relevant part as follows [6]:

> In the event that Executive's employment is terminated by the Corporation without Cause ..., Executive's rights to compensation and benefits shall be as follows:
>
>> (i) Executive shall be paid an amount equal to the aggregate unpaid Basic Salary that Executive would have been paid hereunder for a period of one year after the date of termination of this Agreement (the "Severance Period") in accordance with the Corporation's standard payroll practices; ...
>>
>> (iv) Executive shall be entitled to participate in any and all benefit plans and programs described in Section 5(a), above, until the end of the Severance Period as though Executive's employment had continued hereunder....

The compensation and benefits included aggregate unpaid Basic Salary and other items of compensation. *See* note 5 *supra.*

 Mr. Fields asserts that the Committee's attempt to characterize his claim as one based on length of service is in error and that he is entitled to severance pay in lieu of notice. He asserts that, as in *In re Levinson Steel Co.,* 117 B.R. 194 (Bankr.W.D.Pa.1990), his contract provides for a lump sum payment upon termination in lieu of notice. In *Levinson Steel,* however, the court did not find that the chief financial officer's claim was based on termination in lieu of notice. In *Levinson Steel* debtor's chief financial officer was hired (1) shortly before the reorganization (2) as chief financial officer (3) for the specific purpose of assisting in the reorganization. The court found the CFO's situation distinguishable from that of the general and key employees, whose claims to severance pay were based on length of service, in that it was negotiated on the premise that the CFO's employment would be short-lived and that it was "a necessary incentive to his continued employment at Levinson." 117 B.R. at 196.[7] Mr. Fields is not in the same position as the CFO in *Levinson Steel* and his contract does not provide for severance pay upon termination in lieu of notice nor is it based on length of service. Paragraph 7(c) of the employment contract merely states that if Mr. Fields were terminated without cause, he would be entitled to certain severance benefits. There is no mention in the contract[8] of a pre-termination notice period as there was in *Public Ledger* or of a length of service term as existed in *Levinson Steel* for the general and key employees.

The question, therefore, is how Mr. Fields' claim should be characterized for purposes of payment under the Bankruptcy Code inasmuch as it does not appear to fall within the categories recognized in *Public Ledger* and its progeny. Case law from other districts provides a framework for analysis of the "termination without cause" type of severance provision.

---

2. Benefit Plans and Programs $ 10,416
3. Outplacement Service $ 10,000

Mr. Fields has withdrawn that portion of his claim representing benefits and outplacement services. This $250,000 is at issue.

6. Exhibit "B," pages 5 and 6 to Objection of the Official Committee of Unsecured Creditors to Claim No. 00165 Filed by Richard Fields, Docket No. 524.

7. That portion of the agreement in *Levinson Steel* that provided that the CFO would be entitled to severance pay from the estate even if the debtor's successor in interest retained him as an employee was not approved.

8. Other termination provisions were Termination for Disability, ¶ 7(a); Termination on Executive's Death, ¶ 7(b); Termination for Cause, ¶ 7(d); and Voluntary Termination, ¶ 7(e).

In *In re Selectors, Inc.*, 85 B.R. 843 (9th Cir. BAP 1988), the court, while acknowledging that the Ninth Circuit had adopted the *Public Ledger* view, found that the parachute clause at issue fell into neither the length of service category nor the termination in lieu of notice category. The parachute clause provided for payment of $25,000 if the employment agreement was terminated by the employer or employee within 90 days of certain acquisitions of a controlling interest in the debtor or "Termination of full-time employment, as an officer of ... [president of Selectors] for any reason." 85 B.R. at 844. The Bankruptcy Appellate Panel said that the Ninth Circuit's pronouncement about severance pay rules (" 'pay at termination in lieu of notice' is considered an administrative expense, but ... 'pay at termination based upon length of employment' is not") did not apply to the parachute provision. 85 B.R. at 845, 846. Instead, "such clauses should simply be subjected to analysis under section 503(b)'s standards: Does the clause give rise to an actual and necessary expense of preserving the estate?" *Id.* at 846. The court answered the question in the negative.

The court in *In re Uly–Pak, Inc.*, 128 B.R. 763 (Bankr.S.D.Ill.1991), also concluded that the contract before it did not fit into the length of service category or the termination in lieu of notice category. In *Uly–Pak*, as in the matter at bench, the employment contract provided that the employee would be entitled to severance pay if terminated other than for cause. The court held that this contract term was not a length of service or termination without notice clause. Therefore, the administrative status of the right to severance pay was "dependent upon the substance of the contractual provision." 128 B.R. at 766. That is, because the "policy underlying priority treatment for administrative expenses is to encourage creditors to extend credit that will enable a reorganization to succeed", *id.*, the right to payment as an administrative expense must arise from a transaction with the debtor *and* must have benefitted the debtor. . . . [9] *Id.*, citing *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984).

It therefore appears that length of service and termination in lieu of notice provisions in employment contracts do not exhaust the universe of types of severance pay clauses. Mr. Fields' severance pay clause is similar to that in *Uly–Pak*: it provided for severance on termination without cause, with no mention of length of service or a notice period. *See Uly–Pak*, 128 B.R. at 768. As did the claimant in *Uly–Pak*, Mr. Fields became "eligible for severance pay immediately upon signing his employment contract." *Id.* at 766, 768. That is, "it is not determinative that payment of the lump sum was contingent upon [his] termination, an event which occurred post-petition. In determining administrative priority, courts look to 'when the acts giving rise to a liability took place, not when they accrued' ". *In re Commercial Financial Services, Inc.*, 246 F.3d 1291, 1295 (10th Cir.2001), quoting *In re Sunarhauserman, Inc.*, 126 F.3d 811, 818 (6th Cir.1997) (rehearing denied). We agree with the rationale in *Uly–Pak* and *Commercial Financial Services*.

**9.** The claimant in *Uly–Pak* argued that his employment contract could be deemed to have been assumed *nunc pro tunc*. The court rejected the contention that a contract may be assumed by implication, finding that when the debtor was sold the claimant's employment contract was not assumed even though the claimant continued to work for the buyer until his employment was terminated. The contract was also not deemed rejected because it terminated with the employment when the debtor's assets were sold.

In addition, Mr. Fields' claim for severance did not arise from a postpetition transaction with Debtors nor was it beneficial to the operation of the business. He did not sign a contract with the Debtors in connection with postpetition work. In fact, although the court had authorized Debtors to offer a retention incentive plan to its employees, Mr. Fields declined to accept it. The fact that he continued to be employed with Debtors postpetition "is insufficient to establish a transaction with the debtor in possession for administrative priority purposes." *In re Commercial Financial Services, Inc.,* 246 F.3d at 1294. Even if one disagrees with the proposition that the right to payment must arise through some transaction with the debtor postpetition, whether the claim is entitled to administrative expense status must be subjected to the standard § 503(b) test. That is, the claim must represent an "actual, necessary cost[ ] and expense[ ] of preserving the estate". 11 U.S.C. § 503(b)(1)(A). There is no allegation in this case that Mr. Fields' employment served this function. We conclude that his claim for severance pay is a prepetition unsecured claim.

### Maria Del Pilar Carames' Claims

Dates relevant to these claims are:

| | |
|---|---|
| 8/19/94 | Letter agreement dated August 17, 1994, extending employment of Ms. Carames with Crystal Brands Jewelry Group signed; no termination date included. *See* Exhibit A to Debtors' Objection to Claim Nos. 00178 and 00179 filed by Maria del Pilar Carames, Docket No. 575. |
| 11/3/94 | Debtors were the successful bidders at auction of Crystal Brands Jewelry Group. |
| 5/11/00 | Debtors filed Chapter 11. |
| 6/29/00 | Ms. Carames expressly rejected a retention incentive plan offered by Debtors postpetition. *See* Exhibit to Ms. Carames' Opposition to Debtors' Objection, Docket No. 629. |
| 7/31/00 | Ms. Carames was terminated.[10] |
| 8/14/00 | Ms. Carames filed two claims—one, a prepetition unsecured priority claim in the amount of $150,157.62, and another, an administrative claim for the same amount. Each included an identical attachment which identified the claim as for wages, salaries and compensation of $114,540.24 (salary) and $9,545.02 (vacation) and $26,432.36 (severance),[11] the latter calculated on the basis of one week of pay for every year of service. *See* Exhibits A and B to Debtors' Objection.[12] *Cf.* n.13, *infra.* |

### Claim for Salary of $114,540.24 Paid as Severance

The August 17, 1994, letter agreement between Ms. Carames and Debtors' predecessor, the Crystal Brands Jewelry Group, provides that it "is intended to confirm the arrangements we agreed upon to induce you to remain in the employ of the Crystal Brands Jewelry Group." *See* Letter of August 17, 1994, Exhibit A to Debtor's Objection. The agreement pro-

10. Opposition to Debtors' Objection to Claim Nos. 00178 and 00179 Filed by Maria del Pilar Carames at 7, n.5, Docket No. 629.

11. In her Opposition to Debtors' Objection, Docket No. 629, Ms. Carames asserts that "her proof of claim should be considered amended from the original [severance pay] amount of $26,432.36 to $45,375.62". *Id.* at 8. It does not appear that an amended proof of claim has been filed. Accordingly, we consider the claim to be as filed in the absence of any amendment.

12. Ms. Carames also asserted that she is entitled to payment under Title 29, Puerto Rico Laws Annotated, § 185A, § 185B. At the hearing on Debtor's objection to her claim held on March 1, 2001, she agreed through counsel that these sections do not apply to her severance pay claim. Part of Ms. Carames' claims also included vacation pay. The parties disagreed on the proper calculation of vacation pay. They were to file a stipulation on or before March 30, 2001. As of this writing, according to the docket, no stipulation has been filed. A rule to show cause why the objection to this portion of the claim should not be dismissed will be issued.

vided that effective February 15, 1995, her annual base salary would increase from $95,000 to $105,000. Thereafter, Ms. Carames received annual salary increases. The agreement also provided that "[i]n the event the Company shall terminate your employment without 'cause' . . ., the Company shall continue to pay to you your then current base salary for a period of twelve (12) months following the effective date of the termination of your employment." Letter of August 17, 1994, Exhibit A to Debtor's Objection.

Debtors argue that the letter agreement upon which Ms. Carames bases her claim expired in February 1996, one year after Ms. Carames received the increase in salary from $95,000 to $105,000.[13] However, we found at the hearing on March 1, 2001, that Debtors had assumed the contract when purchase of Crystal Brands Jewelry Group's assets occurred. First, prepetition, Debtors had provided annual salary increases to Ms. Carames, culminating in an annual salary on the date of her termination of $114,540.24. Second, Debtors offered Ms. Carames the same retention incentive option offered to Mr. Fields which required waiver of any severance claim under a prepetition contract. Although Ms. Carames refused the offer, the fact that it was made is an indication that Debtors considered the letter agreement to have been viable at the time the offer

was made. Third, the purchaser of Debtors' assets did not assume the 1994 agreement and Ms. Carames' employment was terminated.

The provision for payment of salary on termination in the 1994 letter agreement is the same type of provision contained in Mr. Fields' employment contract. For the same reasons, it is not an administrative claim. That is, the letter agreement provides for payment of annual salary "[i]n the event the Company . . . terminate[s] . . . employment without 'cause'". Letter of August 17, 1994, Exhibit A to Debtor's Objection. It is neither a length of service nor a termination without notice clause. As was Mr. Fields' claim for severance pay, her claim was not the result of a postpetition transaction with Debtors nor was it beneficial to the operation of the business. Ms. Carames, like Mr. Fields, declined to sign a contract with the Debtors in connection with postpetition work and declined to accept the retention incentive plan. Her continued postpetition employment "is insufficient to establish a transaction with the debtor in possession for administrative priority purposes." *In re Commercial Financial Services, Inc.*, 246 F.3d at 1294.

■ Ms. Carames' claim is also not entitled to payment as a prepetition priority claim inasmuch as it was fully earned when she signed the letter agreement in

---

13. Debtors paid Ms. Carames $464.09 as their calculation of her entitlement, allegedly as a non-contract employee, to a severance calculated at the rate of one week severance pay due for each year of employment multiplied by the 75 days she worked postpetition. *See* Debtor's Objection to Claim, Docket No. 575, ¶ 15. That amount will be offset from the distribution on Ms. Carames' allowed claim.

1994. In order to constitute a prepetition priority claim, the right to payment must have been earned within 90 days prepetition and the amount is limited to $4,300. 11 U.S.C. § 507(a)(3). The severance claim based on salary does not meet the standard.

### Claim for $26,432.36 as Severance

■ The basis for Ms. Carames' claim for severance in the amount of $26,432.36 "not paid, one week for every year of service" arises from the Debtors' severance policy with respect to its non-contract employees. *See* Debtors' Objection at ¶ 17. Debtors do not object to Ms. Carames' being paid severance as a non-contract employee but object to classification of her severance claim as a priority or administrative claim. *Id.* at ¶¶ 17, 24–26. She has been paid severance in the amount of $464.09 as a non-contract employee. Debtors' Objection at ¶ 15.

We found at the March 1, 2001, hearing that the letter agreement was in effect when Ms. Carames' employment was terminated on the sale of Debtors' assets. Therefore, she is not entitled to payment of her severance claim of $26,432.36 as a non-contract employee. Thus, whether the amount claimed is $26,432.36, or $45,375.62 as purportedly "amended" in her Opposition to Debtors' Objection, is irrelevant inasmuch as the claim shall be disallowed.